# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| BARBARA C., <br><br>　　　　Plaintiff, <br><br>v. <br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br>Case No. 2:17-cv-00567-PMW <br><br><br>Chief Magistrate Judge Paul M. Warner |

All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is plaintiff Barbara C.'s ("Plaintiff") appeal of the Acting Commissioner of Social Security's ("Commissioner") final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] After careful review of the administrative record, the parties' briefs, and the relevant law, the court finds no reversible legal error and concludes that the Commissioner's decision is supported by substantial evidence. The court therefore affirms the decision.

---

[1] *See* docket no. 13.

[2] *See* docket no. 3.

## BACKGROUND

Plaintiff filed an application for DIB on November 26, 2012 and SSI on January 18, 2013, alleging disability beginning November 20, 2012, due to diabetes mellitus, depression, anxiety, and intellectual disability.[3] Plaintiff's claims were denied initially and on reconsideration.[4] Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following two hearings before ALJ Gilbert A. Martinez, the ALJ issued his unfavorable decision dated May 25, 2016.[5] The ALJ found that Plaintiff suffered from the severe impairments of diabetes mellitus, type 2; anxiety; and borderline intellectual functioning.[6] However, the ALJ did not find that any of these impairments or combination of impairments met or medically equaled the severity of a per se disabling impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").[7] The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following mental limitations: she could understand, remember, and carry out short, simple instructions; she could make simple work related decisions; and she could interact with supervisors and coworkers, but should have only brief and superficial contact with the public.[8] Given this RFC, the ALJ found that Plaintiff could return to her past work as a housekeeper, and could also

---

[3] *See* docket no. 9, Administrative Transcript ("Tr. __") at 15-18.

[4] *See* Tr. at 15.

[5] *See* Tr. at 15-35.

[6] *See* Tr. at 18.

[7] *See* Tr. at 18-21.

[8] *See* Tr. at 21.

perform work existing in significant numbers in the national economy.[9] Therefore, the ALJ found that Plaintiff was not disabled under the Act.[10] The Appeals Council denied Plaintiff's request for review,[11] making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1481.

## **STANDARD OF REVIEW**

The court "'review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). In reviewing the ALJ's decision, the court cannot "reweigh the evidence" or "substitute" its judgment for that of the ALJ. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citations omitted). "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

---

[9] *See* Tr. at 33-35.

[10] *See* Tr. at 35.

[11] *See* Tr. at 1-3.

A five-step evaluation process has been established for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iv), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential disability determination is as follows:

1. If the claimant is performing substantial gainful work she is not disabled.

2. If the claimant is not performing substantial gainful work, her impairment(s) must be severe before she can be found to be disabled.

3. If claimant is not performing substantial gainful work and has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment(s) meets or medically equals [a Listing], the claimant is presumed disabled without further inquiry.

4. If the claimant's impairment(s) does not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairment(s) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her [RFC] and vocational factors, she is not disabled.

*Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1326–27 (D. Utah 2006); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Williams*, 844 F.2d at 750–51.

The claimant bears the burden of proof beginning with step one and ending with step four. *See Williams*, 844 F.2d at 750–51; *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). At step five, the burden of proof shifts to the Commissioner to establish "whether the claimant has the [RFC] . . . to perform other work in the national economy in view of his [or her] age, education, and work experience." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is

determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," *id.*, he is disabled and entitled to benefits.

## ANALYSIS

Plaintiff's opening brief alleges three flaws in the ALJ's decision, which Plaintiff argues merit reversal. First, Plaintiff argues that the ALJ's decision should be reversed because the ALJ substituted his own lay opinion for that of two medical professionals. Second, the ALJ alleges that the ALJ failed to consider Plaintiff's limitations under Listing 12.05 for intellectual disability. Finally, Plaintiff argues that the ALJ committed reversible error by failing to assign weight and explain the weight assigned to the medical opinion of John Hardy, Ph.D. ("Dr. Hardy"). The court will address Plaintiff's first two arguments together, as they both relate to Plaintiff's IQ scores, and will then address Plaintiff's third argument.

### I. ALJ Did Not Improperly Substitute His Own Opinion Because Further IQ Testing Was Not Required for ALJ to Conclude That Plaintiff Did Not Meet a Listing.

The Plaintiff first argues that the ALJ improperly substituted his judgment for that of medical professionals when he failed to pursue additional IQ testing. Plaintiff also argues that the ALJ erred by failing to consider the intellectual disability Listing (Listing 12.05). The Commissioner argues that although there was inconsistent evidence, the ALJ did not need to pursue additional IQ testing because other evidence in the record was sufficient to support a finding that Plaintiff did not meet Listing 12.05.

5

Pursuant to the regulations in effect when the ALJ made his decision, if all the evidence received by the ALJ, "including medical opinion(s), is consistent and there is sufficient evidence for [the ALJ] to determine whether [the claimant] is disabled, [the ALJ] will make [his] determination based on that evidence." 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If the evidence is inconsistent, the ALJ "will weigh the relevant evidence and see whether [he] can determine whether [the claimant] is disabled based on the evidence" the ALJ has. *Id.* at §§ 404.1520b(b), 416.920(b). However, if the evidence is consistent but insufficient to determine whether the claimant is disabled, or if after weighing the evidence, the ALJ determines he cannot reach a conclusion about whether the claimant is disabled, the ALJ will further develop the record. *See id.* at §§ 404.1520b(c), 416.920b(c).

Here, the IQ tests administered by Dr. Hardy indicated Plaintiff's full-scale IQ was 63.[12] Dr. Hardy stated that during the testing, Plaintiff "was trying in earnest" on tasks "where she was easily overwhelmed by the complexity," and "[s]he was giving her best effort throughout the testing."[13] Dr. Hardy noted in his report that Plaintiff's "scores show her functioning to be equivalent to that of the mild range of mental retardation," however, he also stated that "[h]er adaptive functioning is better than this, consequently this diagnosis would be inappropriate."[14]

The medical expert who testified at the second hearing, Ronald P. Houston, Ph.D. ("Dr. Houston"), opined that Plaintiff's IQ scores were not valid and recommended additional IQ

---

[12] *See* Tr. at 465.

[13] Tr. at 466.

[14] *Id*.

6

testing.[15] As the ALJ noted in his decision at step five, "Dr. Houston did not believe that the IQ score was valid or credible given [Plaintiff's] presentation."[16] And, while Dr. Houston thought that Dr. Hardy did not address the issue of the validity of Plaintiff's IQ score, the ALJ noted that given Dr. Hardy's statement that Plaintiff's adaptive functioning was better than her IQ score suggested, "it appears that Dr. Hardy did recognize a difference between the [Plaintiff's] presentation and her testing scores."[17]

Plaintiff argues that the ALJ erred by neither treating the IQ scores as valid—as Plaintiff suggests Dr. Hardy did, nor by pursuing additional IQ testing—as Dr. Houston recommended. Plaintiff asserts that the ALJ instead substituted his lay opinion by determining Plaintiff's disability without additional IQ testing. The court disagrees. As explained in more detail below, although there was arguably an inconsistency in Dr. Houston's and Dr. Hardy's opinions of the validity of the IQ scores, there was sufficient evidence in the record for the ALJ to determine that Plaintiff did not meet a Listing. *See* 20 C.F.R. §§ 404.1520b(b) 416.920b(b).

The analysis at step three asks whether any medically determinable severe impairment, alone or in combination with the other impairments, meets or is medically equivalent to a Listing. *See* 20 C.F.R. §§ 404.925-404.926, § 404, Subpart P, Appendix 1. Listing 12.05 contains an introductory paragraph, or capsule definition, with criteria the claimant must meet in addition to meeting one of the four severity prongs for mental retardation. *See Lax*, 489 F.3d at 1089

---

[15] *See* Tr. at 125.

[16] Tr. at 31.

[17] *Id.*

7

(stating that "[i]n addition to meeting th[e] capsule definition, a claimant must also meet one of the four severity prongs for mental retardation as listed in the regulations"); *see also* 20 C.F.R., § 404, Subpart P, Appendix 1, § 12.00(A) ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The diagnostic description of Listing 12.05 requires that to be found intellectually disabled, one must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . onset of the impairment before age 22." 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.05.

Both Dr. Hardy and Dr. Houston opined that Plaintiff did not have deficits in adaptive functioning, which the ALJ noted in his decision.[18] Although the ALJ did not expressly consider at step three whether Plaintiff met Listing 12.05, he did conclude at that step that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing.[19] Moreover, the ALJ found at step five that Plaintiff's did not have deficits in adaptive functioning and concluded that "the [Plaintiff] can perform simple work as reflected in the [RFC]."[20] "[A]n ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments to not meet or equal any listed

---

[18] *See* Tr. at 19, 23-24.

[19] *See* Tr. at 18. The court also notes that state agency consultant Melvin Sawyer, Ph.D. ("Dr. Sawyer") concluded that the evidence did not establish the presence of the "C" criteria for Listing 12.05, and the ALJ gave Dr. Sawyer's opinion great weight. *See* Tr. at 33.

[20] Tr. at 31.

8

impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Because the ALJ concluded, based on the medical opinion evidence, that Plaintiff did not have deficits in adaptive functioning, Plaintiff could not satisfy the capsule definition of Listing 12.05 regardless of her IQ scores, even if the ALJ had pursued additional testing. *See Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (holding that "[b]ecause [plaintiff] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law").

For the foregoing reasons, the court concludes that the ALJ did not err in failing to pursue additional IQ testing, and reasonably concluded that Plaintiff was not disabled.

## II. ALJ's Failure to Weigh Dr. Hardy's Opinion Was Harmless Error.

Finally, Plaintiff argues that the ALJ committed reversible error by failing to weigh Dr. Hardy's medical opinion. Generally, the ALJ is required to "evaluate every medical opinion" "regardless of the source." 20 C.F.R. §§ 404.1527(c), 416.927(c). "[A]n ALJ must explain what weight is assigned to each opinion and why." *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1157 (D.N.M. 2016) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). Factors to be considered in weighing medical source opinions include the degree to which the source provides supporting explanation for his opinions, consistency with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(1)–(5), 416.927(c)(1)–(5).

However, the need for express analysis is weakened if the ALJ does not need to reject a medical source opinion in order to determine a claimant's RFC. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (holding that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened"). Moreover, the Tenth Circuit has held that where an ALJ does not reject a medical

9

source opinion, and the opinion does not identify any work-related functional limitations, the ALJ does not err by failing to weigh the opinion. *See Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by Dr. DePaula and there were no medical opinions regarding Ms. Duncan's work-related functional limitations, there was no opinion on such matters by Dr. DePaula for the ALJ to weigh.").

Dr. Hardy's statements that Plaintiff "would have challenges currently related to job functioning generally," "appear[ed] quite stuck," and should have a "payee" or someone to handle her benefits for her "because of her limited math skills,"[21] do not identify functional limitations. In any case, contrary to Plaintiff's argument that Dr. Hardy's opinion is "directly unfavorable" to the ALJ's findings,[22] the ALJ appears to agree with Dr. Hardy's assessment. Dr. Hardy diagnosed Plaintiff with depression, panic disorder, and borderline intellectual functioning.[23] The ALJ found that Plaintiff had severe mental impairments —including depression, anxiety, and borderline intellectual functioning—and that she could do only simple work with reduced social contact.[24] And, Dr. Hardy's opinion that Plaintiff had limited math skills is not contrary to the ALJ's finding that Plaintiff is capable of performing past relevant work as a housecleaner, or as a marker,[25] because both of these jobs have a math level of 1, the

---

[21] Tr. at 467.

[22] Docket no. 14 at 17.

[23] *See* Tr. at 466.

[24] *See* Tr. at 18, 21.

[25] *See* Tr. at 33-35

lowest level. *See Dictionary of Occupational Titles* ("DOT") No. 323.687-014 (cleaner, housekeeping); DOT No. 209.587-034 (marker).

Moreover, the ALJ gave great weight to the opinions of non-examining state agency consultant Joshua Clauson, Ph.D. ("Dr. Clauson").[26] Dr. Clauson reviewed the record, including Dr. Hardy's report, and offered the only medical opinion to identify functional limitations—that Plaintiff was capable of "at a minimum simple 1 and 2 step tasks in a low-public/low social position."[27]

Because the court finds that Dr. Hardy's opinion did not conflict with the ALJ's RFC finding, and the ALJ reasonably gave great weight to Dr. Clauson's opinion, the court concludes that the ALJ's failure to weigh Dr. Hardy's opinion was harmless error.

## **CONCLUSION**

Based on the foregoing, the court concludes that all of Plaintiff's arguments fail. Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

IT IS SO ORDERED.

DATED this 25th day of September, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[26] *See* Tr. at 33.

[27] Tr. at 188.